```
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
_____

In re:

WILLIAM L. CARPITELLA (aka
Bill Carpitella, aka Member,              Case No. 09-20332
The Sharrow Group LLC, aka
Member, Rochester Property
Management LLC),

                        Debtor.           DECISION & ORDER
_____

KENNETH W. GORDON, As Trustee,
JAMES JOYCE and THE OFFICE
OF THE UNITED STATES TRUSTEE,

                        Plaintiffs,

           V.                             AP #09-2028

WILLIAM L. CARPITELLA,

                        Defendant.
_____
```

BACKGROUND

On February 13, 2009, William L. Carpitella (the "Debtor") filed a petition initiating a Chapter 7 case, and Kenneth W. Gordon, Esq. was appointed as his Chapter 7 case trustee (the "Trustee"). On the original Schedules and Statements required to be filed by Section 521 and Rule 1007, all executed by the Debtor on February 13, 2009, (the "Initial Schedules"): (1) the Debtor answered "none" on Schedule B - Personal Property, Question #15, which asks if the debtor was the owner of any government and corporate bonds and other negotiable and non-negotiable

instruments; (2) the Debtor answered "none" on Schedule B - Personal Property, Question #35, which asks if the debtor was the owner of other personal property of any kind not already listed; and (3) the Debtor indicated on Schedule B for stock and interests in incorporated and unincorporated businesses,[1] and on the Statement of Financial Affairs, Question #10 - Other Transfers, that in 2009, Rochester Property Management LLC sold a small office building at 254 Empire Boulevard that The Sharrow Group LLC ("Sharrow") had rented to an unrelated third party, and paid off the mortgage (the "254 Empire Boulevard Sale").

On April 9, 2009, the Trustee conducted a Section 341 Meeting of Creditors (the "Meeting of Creditors") at which it was ultimately revealed by the Debtor that on the date of the filing of his petition, as a one-third owner, he was holding a check in the amount of $11,140.06 (the "Sale Proceeds") from the 254 Empire Boulevard Sale, which he deposited post-petition on March 30, 2009, and on the same day he paid $9,000.00 of those Sale Proceeds to Charlene Centron ("Centron"), allegedly in repayment of a debt

---

[1] On Schedule B, the Debtor also scheduled, in conjunction with his listing of Rochester Property Management, LLC, his one-third interest in this company.

**Page 2**

incurred to her prepetition, even though Centron was not listed as a creditor in any capacity on the Initial Schedules.[2]

On May 12, 2009, the Trustee commenced an Adversary Proceeding (the "Discharge Proceeding") against the Debtor, pursuant to Section 727, which requested that the Court deny the Debtor's discharge because, among other allegations: (1) he had concealed his property or property of the estate; and (2) he had knowingly and fraudulently made a false oath relating to his property and financial affairs. On June 9, 2009, the Debtor interposed an Answer to the Complaint in the Discharge Proceeding.

On July 14, 2009, the Trustee filed a Motion to Compromise and Settle the Discharge Proceeding (the "Compromise Motion"), which was based upon the Debtor's offer to pay over the amount of the Sale Proceeds and the expenses incurred by the Trustee. The Debtor had placed this amount on deposit with the Trustee from his exempt assets. The Compromise Motion was opposed by the Office of the United States Trustee (the "U.S. Trustee") and one of the Debtor's creditors, James Joyce ("Joyce").

The Court denied the Compromise Motion and in a November 5, 2009 Order: (1) permitted the U.S. Trustee and Joyce to intervene

---

[2] On June 5, 2009, the Debtor amended his Schedule B to reflect that Centron was an unsecured creditor in the amount of $9,000.00 for funds loaned for living expenses. The Court notes that Centron filed an Affidavit, dated February 5, 2010, indicating that she expended approximately $12,600.00 on the Debtor's behalf from May 2008 through November 2008.

as plaintiffs in the Discharge Proceeding; (2) required the return of the deposit to the Debtor; and (3) authorized the Trustee to amend his Complaint in the Discharge Proceeding to assert a cause of action under Section 542 for the turnover of the unscheduled Sale Proceeds, which Amended Complaint was filed by the Trustee on November 25, 2009.[3]

The Discharge Proceeding was scheduled on the Court's January 20, 2010 Trial Calendar Call, which was adjourned to February 10, 2010, the return date of a Motion for Summary Judgment filed by the U.S. Trustee (the "U.S. Trustee Motion for Summary Judgment").

Thereafter, on February 5, 2010, the Debtor filed an Affidavit in Opposition to the U.S. Trustee Motion for Summary Judgment, as well as a Cross-Motion for Summary Judgment (the "Debtor Motion for Summary Judgment").

The U.S. Trustee Motion for Summary Judgment asserted that: (1) the Debtor had admitted in his pleadings filed in the Discharge Proceeding that: (a) he had received and was holding the check for the Sale Proceeds on the date of the filing of his petition; and (b) he did not deposit the check for the Sale Proceeds for over a month after the filing of his petition; (2) the Debtor did not

---

[3] The Debtor filed an Answer to the Amended Complaint.

**Page 4**

schedule the check for the Sale Proceeds or the Sale Proceeds on his Initial Schedule B, filed on February 13, 2009, along with his bankruptcy petition; (3) even though he had deposited the check for the Sale Proceeds less than two weeks before his Meeting of Creditors, and had paid Centron $9,000.00 on the same day as the deposit, the Debtor failed to take the opportunity to disclose the Sale Proceeds and the related transactions at the beginning of the Meeting when the Trustee asked him if he had scheduled all of his assets, instead, affirming that he had; (4) it was only after extensive questioning by the Trustee about the 254 Empire Boulevard Sale that the Debtor admitted: (a) his possession of the check for the Sale Proceeds; (b) his failure to schedule the check or the Sale Proceeds; and (c) his failure to schedule Centron as a creditor on his Initial Schedules, even though he asserted that he paid her the $9,000.00 from the Sale Proceeds in repayment of a prepetition debt; and (5) it was clear from a reading of the transcript of the Meeting of Creditors, attached to the U.S. Trustee Motion for Summary Judgment, that many of the statements the Debtor made about the 254 Empire Boulevard Sale, the Sale Proceeds, and the payment to Centron were evasive, incomplete, and misleading.

The U.S. Trustee Motion for Summary Judgment further asserted that: (1) there was not a genuine, disputed, material issue of

fact that would require the Bankruptcy Court to conduct a hearing; (2) the Court should grant the U.S. Trustee Motion for Summary Judgment and deny the Debtor's discharge under Section 727(a)(4)(A),[4] because the Debtor: (a) knowingly and fraudulently made a false oath in failing to schedule the check for the Sale Proceeds or the Sale Proceeds on his Initial Schedule B; (b) failed to voluntarily disclose them to the Trustee at the Meeting of Creditors, except after extensive questioning by the Trustee; and (c) failed to list Centron as a creditor on his Initial Schedules; (3) the Debtor was a sophisticated businessman who should be held to a higher standard of paying attention to detail in filling out his Schedules than an ordinary consumer; and (4) the Court should grant the U.S. Trustee Motion for Summary Judgment and deny the Debtor's discharge pursuant to Section 727(a)(2)(B),[5] because with

---

[4] Section 727(a)(4) provides that:

(a) The court shall grant the debtor a discharge, unless—

    (4) the debtor knowingly and fraudulently, in or in connection with the case

        (A) made a false oath or account[.]

11 U.S.C. § 727 (2010).

[5] Section 727(a)(2)(B) provides that:

(a) The court shall grant the debtor a discharge, unless—

    (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate

intent to hinder, delay or defraud the Trustee, he concealed from the Trustee: (a) the check for the Sale Proceeds and the Sale Proceeds; and (b) the payment to Centron of a portion of the Sale Proceeds, and only disclosed these after extensive questioning by the Trustee.

The Debtor Motion for Summary Judgment asserted that: (1) based upon an Affidavit of the Debtor: (a) there was not a genuine, disputed, material issue of fact that would require the Bankruptcy Court to conduct a hearing; (b) 95% of his unsecured debt resulted from his role as the Chief Executive Officer of Sharrow and his personal guarantees of a number of its various obligations; (c) the business of Sharrow declined, and eventually ceased operating, so that from May 2008 through most of 2009, the Debtor had no source of income; (d) this lack of income caused Centron to move in with him and pay his personal expenses from May 2008 through November 2008, including mortgage payments, property maintenance, utilities and groceries, in the amount of

---

> charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed ---
>
> (B) property of the estate, after the date of the filing of the petition[.]

11 U.S.C. § 727 (2010).

**Page 7**

approximately $1,800.00 per month; (e) in November 2008, he orally assigned any profits he might make from a possible sale of 254 Empire Boulevard to Centron, since he had always considered her payments of his living expenses as loans rather than as gifts; (f) he most likely had possession of the check for the Sale Proceeds just prior to the filing of his bankruptcy on February 13, 2009; (g) he did not revise his Initial Schedules, or advise his attorneys of the check for the Sale Proceeds, because he honestly felt that those funds belonged to Centron, by reason of his November 2008 oral assignment; (h) his failure to list the Sale Proceeds as an asset was simply a mistake, not something he would have done intentionally, and, furthermore, he believed that the scheduling of the 254 Empire Boulevard Sale was sufficient to enable the Trustee to inquire into and determine all of the details of the Sale; (i) the transcript of the Meeting of Creditors showed that he honestly and thoroughly explained the 254 Empire Boulevard Sale and his receipt and disposition of the Sale Proceeds; and (j) he otherwise fully cooperated with the Trustee in the administration of his estate; (2) based upon an Affidavit of Centron: (a) but for the loans that she had made to the Debtor from May 2008 through November 2008, he would most likely have been destitute; (b) in November 2008 the Debtor orally assigned to her whatever interest he might receive from the 254 Empire Boulevard

**Page 8**

**BK. 09-20332**
**AP. 09-2028**

Sale as reimbursement for her loans; and (c) in March 2009, the Debtor fulfilled his obligations under their agreement and his assignment by paying her $9,000.00; and (3) in a Memorandum of Law (the "Debtor's Memorandum"): (a) the Debtor did disclose the 254 Empire Boulevard Sale on his Initial Schedules, specifically, his Statement of Financial Affairs and Schedule B, and ultimately, at his Meeting of Creditors, when he disclosed all of the details of the Sale, including an accounting for the Sale Proceeds; (b) the Debtor did not knowingly and fraudulently, and with intent to deceive, fail to disclose that he was in possession of the check for the Sale Proceeds at the time of the filing of his bankruptcy, by: (i) failing to specifically list the Sale Proceeds on his Initial Schedules; or (ii) failing to initially advise the Trustee of the Proceeds at the Meeting of Creditors; (c) the Debtor disclosed all of the details of the Sale and Sale Proceeds at his Meeting of Creditors, thereby rectifying any omission on his Initial Schedules; (d) there was sufficient information on the Debtor's Schedules with regard to the 254 Empire Boulevard Sale that enabled the Trustee to inquire of the Debtor at the Meeting of Creditors, so that the Trustee could elicit all of the information he needed about the Sale and the Sale Proceeds in order to fully administer the Debtor's estate; and (e) the facts and circumstances presented did not warrant the Court denying the Debtor's discharge

**Page 9**

under Section 727(a)(4)(A) or Section 727(a)(2)(B), based upon controlling case law, including the many Decisions & Orders of this Court under Section 727(a)(4)(A).

At the February 10, 2010 hearing on the competing Motions for Summary Judgment, the parties: (1) confirmed that they did not believe that there were any genuine, disputed, material issues of fact that would require the Court to conduct an evidentiary hearing; and (2) believed that the Court did not need to conduct such an evidentiary hearing in order to make a judgment on the credibility of the Debtor based upon his testimony at such a hearing.

## DISCUSSION

### I. Section 727(a)(4)(A) Cause of Action

#### A. Case Law

From the cases which have been decided under Section 727(a)(4)(A), including this Court's Decisions & Orders in *In re Pierri,* Ch. 7 Case No. 97-20461, A.P. Case No. 97-2125 (W.D.N.Y. April 21, 1998), *In re Wackerman,* (Chapter 7 Case No. 99-20709, W.D.N.Y. November 27, 2000), In *re Ptasinski* (Chapter 7 Case No. 02-20524, A.P. Case No. 02-2172, W.D.N.Y., February 13, 2003) ("*Ptasinski*"), *In re Weeden* (Chapter 7 Case No. 02-23812, A.P. Case

No. 03-2003, W.D.N.Y. February 17, 2004), *In re Foxton* (Chapter 7 Case No. 04-22377, A.P. Case No. 04-2154, W.D.N.Y. April 12, 2005), *In re Mondore* (Chapter 7 Case No. 04-21316, A.P. Case Nos. 04-2124 and 04-2130, W.D.N.Y. June 14, 2005), *In re Hutchinson* (Chapter 7 Case No. 04-25436, A.P. Case No. 05-2027, W.D.N.Y. August 2, 2005), *In re Hoyt* (Chapter 7 Case No. 03-20001, A.P. Case No. 05-2023, W.D.N.Y. February 8, 2006), and *Schmidt v. O'Brien* ("*In re O'Brien*"), 2007 Bankr. Lexis 3604 (Chapter 7 Case No. 05-21316/A.P. Case No. 06-2062) (Bankr. W.D.N.Y. 2007), we know that for the Court to deny a debtor's discharge because of a false oath or account: (1) the false oath or account must have been knowingly and fraudulently made, *see Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244 (4th Cir. 1994); (2) the required intent may be found by inference from all of the facts, *see 6 L.King, Collier on Bankruptcy*, ¶727.04[1][a] at 40 (15th ed. rev. 2005); (3) a reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of the fraudulent intent necessary to bar a discharge, *see In re Diorio*, 407 F.2d 1330 (2d Cir. 1969); (4) a false statement resulting from ignorance or carelessness is not one that is knowing and fraudulent, *see Bank of Miami v. Espino (In re Espino),* 806 F.2d 1001 (11th Cir. 1986); (5) the required

**Page 11**

false oath or account must be material; and (6) the required false oath or account may be a false statement or omission in the debtor's schedules or a false statement by the debtor at an examination at a creditors meeting, *see In re Ball*, 84 B.R. 410 (Bankr. D.Md. 1988). Conversely, if items were omitted from the debtor's schedules because of an honest mistake or upon the honest advice of counsel, such a false declaration may not be sufficiently knowingly and fraudulently made so as to result in a denial of discharge.

### B. False Oaths or Accounts

Based upon the pleadings and proceedings in the Debtor's bankruptcy case and in the Discharge Proceeding, including the competing Motions for Summary Judgment and all of the related submissions, the Court finds that the Debtor's discharge must be denied, because the Debtor knowingly and fraudulently failed to schedule: (1) the Sale Proceeds, which were assets of his estate and in his possession at the time he signed his Initial Schedules and filed his bankruptcy case; and (2) Centron as an unpaid creditor for an amount in excess of $12,000.00.[6]

---

[6] Having determined that these grounds establish the basis for the Court's denial of the Debtor's discharge under Section 727(a)(4)(A) and Section 727(a)(2)(B), the Court does not deem it necessary to address the further allegations of the U.S. Trustee that the Debtor's omissions concerning the scheduling of his bank account balance at Canandaigua National Bank form the basis of denial of the Debtor's discharge under Section 727(a)(4)(A) and Section 727(a)(2)(B).

**Page 12**

The Court believes that these failures to schedule by the Debtor constitute a false oath or account, within the meaning and intent of Section 727(a)(4)(A), and that even if it were possible for a debtor to cure a knowing and fraudulent failure to schedule by ultimately disclosing the unscheduled information at a 341 Meeting,[7] this Debtor did not meet that standard, for the following reasons: (1) the Debtor is a sophisticated businessman, as demonstrated by the language used in the scheduling of his interest in 254 Empire Boulevard on his Initial Schedules, where the description included "sold building; paid off mortgage[,]" a description that he must have specifically directed his attorneys to include, and which would not be language suggested by an ordinary consumer; (2) as a sophisticated businessman, having described his interest in 254 Empire Boulevard as "sold building; paid off mortgage[,]" it is not credible that the Debtor would not

---

[7] Although there is case law to the contrary, and apparently some members of the Bar that regularly practice in the Western District of New York, Rochester Division, believe that the Court agrees with that case law, this Court has never, to its knowledge, indicated that voluntarily "coming clean" at a Section 341 Meeting of Creditors can cure a knowing and fraudulent failure to schedule: (a) an asset that is property of the estate; or (b) a significant creditor that could lead the Trustee to an unscheduled asset.

In this regard, the Court is aware that there undoubtedly are Section 727(a)(4)(A) false oath or account adversary proceedings that are not commenced by a members of the Panel of Trustees in the Western District of New York, Rochester Division, or the U.S. Trustee, because debtors voluntarily disclosed unscheduled information at a Section 341 Meeting of Creditors. However, this Court has never endorsed that practice, unless it was clear to a trustee or the U.S. Trustee from the facts that they could not meet their evidentiary burdens under Section 727(a)(4)(A).

**Page 13**

have: (a) remembered that unusually specific scheduling description on February 13, 2009 when he actually signed his Initial Schedules and filed his bankruptcy; and (b) realized that the description was no longer correct, since he was holding the check for the Sale Proceeds after the closing of the Sale that same week;[8] (3) as a sophisticated businessman, it is not credible that the Debtor would have believed that an oral "assignment" or "agreement" to pay Centron any proceeds from the 254 Empire Boulevard Sale would actually divest him of the ownership of the Sale Proceeds when he was in possession of a check for the Proceeds, made payable to him, at the time he signed the Initial Schedules and filed his bankruptcy on February 13, 2009; (4) accepting for the purposes of this Decision & Order, that there was an oral "assignment" of the Sale Proceeds, the existence of that "assignment," and the Debtor's intent to honor it, is all the more reason that the Debtor must have known that the description on his Initial Schedules of his interest in 254 Empire Boulevard was

---

[8] This is particularly true, given that after reviewing and representing to his attorneys that his schedules were complete and accurate in November 2008, and upon the agreement for the 254 Empire Boulevard Sale being entered on December 22, 2008, the Debtor advised his attorneys of the 254 Empire Boulevard Sale, which was added to his Schedule B and Statement of Financial Affairs, including, "sold building; paid off mortgage[.]" Thus, the Debtor knew of his obligation to schedule his assets completely and truthfully, even undertaking an amendment for the 254 Empire Boulevard Sale, yet, knowingly and fraudulently omitted any reference to Centron or potential sale proceeds at the time of his inclusion of the reference to the 254 Empire Boulevard Sale, and his final execution and filing of the Initial Schedules.

**Page 14**

incorrect and seriously misleading; (5) as a sophisticated businessman, the Debtor must have known that, notwithstanding any "assignment" or "agreement," since Centron had not actually been repaid on February 13, 2009 for the alleged loans, that she was a creditor that should have been listed on his Initial Schedules, even if as a secured creditor or for holding an assignment; (6) having cashed the check for the Sale Proceeds and paid a portion of them to Centron between the date of the filing of his petition and the Meeting of Creditors, once again, as a sophisticated businessman, the Debtor must have realized that the scheduling of his interest in 254 Empire Boulevard and his failure to list the Sale Proceeds or Centron as a creditor were incorrect and misleading, so that his confirmation to the Trustee at the beginning of the Meeting of Creditors that he had listed all of his assets and liabilities, was false, and it had to have been knowingly and fraudulently made with an intent to deceive; (7) during the Meeting of Creditors, when the Debtor initially stated to the Trustee that 254 Empire Boulevard had been "sold for a loss," he could only have made that statement knowingly and fraudulently with intent to deceive; and (8) it is clear from an overall reading of the transcript of the Meeting of Creditors that: (a) the Debtor was playing "twenty questions" with the Trustee, and never, in this Court's opinion, would have fully disclosed all of

the details of the Sale Proceeds and the payment to Centron had the Trustee not continued his questioning about the 254 Empire Boulevard Sale in an effort to obtain from the Debtor all of the relevant details; and (b) the Debtor is not the honest but unfortunate debtor that is entitled to a discharge and a fresh start.[9]

## II. Section 727(a)(2)(B) Cause of Action

The same facts, circumstances and findings, as set forth above in this Decision & Order, support a finding by this Court that the Debtor's discharge should be denied under Section 727(a)(2)(B), because they constitute a concealment by the Debtor, with the intent to hinder, delay and defraud the Trustee of: (1) the Sale Proceeds as property of the estate; and (2) the payment of a portion of that property of the estate to Centron post-petition without Court authority.

---

[9] The parsing in the Debtor's Memorandum of the various Decisions & Orders of this Court under Section 727(a)(4), left the Court wondering if it had actually written those Decisions.

### CONCLUSION

For the reasons set forth in this Decision & Order, the Debtor's discharge is denied pursuant to Section 727(a)(4)(A) and Section 727(a)(2)(B).

In view of the denial of discharge for the reasons set forth above, it is not necessary at this time for the Court to address whether the other facts and circumstances that the U.S. Trustee asserted in the U.S. Trustee Motion for Summary Judgment should result in a denial of discharge.

**IT IS SO ORDERED.**

>        /s/
> **HON. JOHN C. NINFO, II**
> **U.S. BANKRUPTCY JUDGE**

**Dated: March 17, 2010**